United States District Court
Southern District of Texas

**ENTERED**

June 29, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUNDO OLFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3421 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] is Defendant City of Houston's ("Defendant") Motion to Dismiss (Doc. 7). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.

## I.  Case Background

Plaintiff filed this suit against his former employer, alleging that Defendant violated 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964[2] ("Title VII"), the Texas Commission on Human Rights Act[3] ("TCHRA"), and the Americans with Disabilities Act[4] ("ADA").

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  <u>See</u> Doc. 11, Ord. Dated Mar. 1, 2018.

[2]    42 U.S.C. §§ 2000e-2000e-17.

[3]    Tex. Lab. Code §§ 21.001-21.556.

[4]    42 U.S.C. § 12112.

Lastly, Plaintiff alleges a breach of contract claim.[5]

A.  **Factual Background**[6]

Plaintiff began working for the Houston Fire Department ("HFD") on August 19, 1991.[7]

1.  **Lawsuit**

In 2008, Plaintiff, along with six other African-American firefighters, became involved in a disparate impact lawsuit alleging that Defendant discriminated against African-American firefighters in its civil service exams, thus, barring them from promotions.[8]  By 2010, the lawsuit was settled, and Plaintiff was awarded backpay and promoted to captain.[9]  As a result, Plaintiff suffered insults from HFD co-workers.[10]  Specifically, Plaintiff was accused of being promoted solely on the basis of the settlement rather than on merit or seniority and was referred to as "paper captain" and "one of the seven."[11]

Fire Chief Terry Garrison ("Chief Garrison") met with Plaintiff after the lawsuit, offered him congratulations, and told

---

[5]     See Doc. 2, Pl.'s Am. Compl. p. 2.

[6]     The following factual account is derived from Plaintiff's amended complaint.

[7]     See id. p. 3.

[8]     See id.

[9]     See id.

[10]    See id. p. 9.

[11]    Id.

Plaintiff to report any suspect behavior to him directly.[12] Plaintiff followed through by telling Chief Garrison about the "paper captain" comments, his right shoulder issues, and his request to transfer back to dispatch.[13]  Plaintiff alleges that Chief Garrison ignored his complaints.[14]

Members of the Houston Professional Fire Fighters Association IAFF Local 341 held meetings regarding Plaintiff's lawsuit.[15] Executive Chief Richard Mann ("Executive Chief Mann"), who was "second in command to Chief Garrison," attended these meetings where Plaintiff "was repeatedly identified as 'one of the seven.'"[16]

### 2.  Injuries and Illness

On December 11, 2011, Plaintiff sustained injuries to his neck and shoulders while on active duty.[17]  As a result, Plaintiff was placed in a full-time transitional desk position at the dispatch office the following year.[18]  After Plaintiff underwent surgery to his neck and shoulders in November 2013, he was cleared for light duties by his doctor and transferred to a transitional desk

---

[12]   See id. p. 16.

[13]   See id.

[14]   See id.

[15]   See id.

[16]   Id.

[17]   See id. p. 3.

[18]   See id.

position in the public affairs division.[19]  Although Plaintiff was eager to return to his previous dispatch position, a move which was supported by Chief Garrison, Executive Chief Mann and City Councilman Ed Gonzalez insisted he remain in the public affairs division.[20]

In June 2015, Plaintiff was diagnosed with myeloid leukemia which caused him to take a leave of absence.[21]  Plaintiff resumed his transitional desk job in October 2015.[22]  Captain Ruy Lozano approached Plaintiff's superiors in an attempt to make the transitional desk job a permanent position for Plaintiff; Chief Garrison consented but Executive Chief Mann vetoed the idea.[23]

On February 3, 2016, Plaintiff attended a fitness-for-duty meeting with HFD and informed the department that he was undergoing cancer treatment.[24]  During this meeting, Plaintiff requested to remain in his transitional desk position because the doctors cleared him for sedentary work.[25]  HFD responded that the desk position was temporary, and gave Plaintiff the option to either retire or be reclassified as a civilian and HFD would conduct a job

---

[19]     See id. p. 4.

[20]     See id.

[21]     See id.

[22]     See id.

[23]     See id.

[24]     See id. p. 5.

[25]     See id. p. 6.

4

search for him.[26]  Plaintiff reluctantly chose medical separation in order to be eligible for disability benefits which HFD was aware he was pursuing at the time.[27]

In March 2016, upon the request of the Houston Firefighters' Relief Retirement Fund, Dr. Jim Kelaher, M.D., ("Dr. Kelaher") conducted Plaintiff's disability evaluation.[28] While the evaluation reported his condition to be permanent and require regular treatment, Plaintiff was found to have no impairment of comprehension or mental abilities throughout the exam.[29]  The evaluation concluded that the cancer was presumptively duty-related because there was no indication otherwise.[30]  On March 14, 2016, Plaintiff was medically separated from HFD.[31]  On April 14, 2016, Plaintiff received treatment from Dr. Priya Ramshesh, M.D., ("Dr. Ramshesh") who agreed with Dr. Kelaher that Plaintiff was able to maintain a desk position but could not perform strenuous physical labor.[32]

In October 2016, six months after Plaintiff was medically separated from employment, HFD posted a job advertisement to fill

---

[26]    See id. p. 5.

[27]    See id.

[28]    See id. p. 5.

[29]    See id.

[30]    See id.

[31]    See id. p. 3.

[32]    See id. p. 6.

his vacant desk position.[33]   While the posting called for a firefighter, engineer, or operator, Plaintiff alleges that the position required minimal physical activity as it was inherently a "light duty" position.[34]   Coincidentally, a similar job advertisement was posted in November 2015 before Plaintiff was diagnosed with cancer.[35] At the time, Plaintiff was arguably secure at his dispatch position and had no need to apply for the job.[36]

Plaintiff alleges that he knew of an African-American colleague, Margaret Roberts ("Roberts"), who suffered from a chronic illness and was given additional assistance in filing for Social Security and other benefits at her fitness for duty meeting.[37] Plaintiff attributes Ms. Robert's favorable treatment to her friendship with Assistant Chief Lisa Campbell.[38] Moreover, in his complaint, Plaintiff provides the names of five white HFD firefighters who also allegedly received preferential treatment for their disabilities through permanent desk job accommodations.[39] Plaintiff alleges that while his request for a desk position was

---

[33]   See id. p. 7.

[34]   Id.

[35]   See id.

[36]   See id.

[37]   See id. p. 8

[38]   See id.

[39]   See id. p. 9

denied, his white counterparts were reasonably accommodated.[40]

## B.   **Procedural Background**

On March 28, 2016, Plaintiff filed a charge of discrimination against the City of Houston with the Equal Employment Opportunity Commission ("EEOC").[41]  The EEOC issued a notice of right to sue on August 10, 2017.[42]  On November 8, 2017, Plaintiff filed his complaint, followed by an amended complaint on November 9, 2017, with a jury demand.[43] Defendant filed the pending motion to dismiss for failure to state a claim on January 3, 2018.[44]  Plaintiff responded to the motion on January 24, 2018.[45]

## II.   **Legal Standard**

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

---

[40]   See id.

[41]   See Doc. 2, Pl.'s Am. Compl.

[42]   See id.

[43]   See Doc. 1, Pl.'s Compl.

[44]   See Doc. 7, Def. City of Houston's Mot. to Dismiss.

[45]   See Doc. 2, Pl.'s Am. Compl.

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III. Analysis

In reviewing Defendant's motion to dismiss, the court will consider Defendant's challenges to the following claims: (1) Section 1981; (2) Section 1983; (3) Title VII and TCHRA; and (4) breach of contract.

### A. Section 1981

Defendant argues that Plaintiff cannot pursue a Section 1981 cause of action because Title VII is his exclusive remedy. Section 1981 provides that every person "shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all

laws and proceedings for the security of persons and property as is enjoyed by white citizens..." 42 U.S.C. § 1981(a).  "'Section 1981 does not provide a general cause of action for race discrimination,' but instead 'prohibits intentional race discrimination with respect to certain enumerated activities.'" Arguello v. Conoco, Inc., 330 F.3d 355, 358 (5th Cir. 2003).

The rights protected by Section 1981 are limited to "impairment by nongovernmental discrimination and impairment under color of state law." 42 U.S.C. § 1981(c).  However, Section 1981 has been interpreted to only "impl[y] a cause of action against private actors." Oden v. Oktibbeha County, Mississippi, 246 F.3d 458, 463 (5th Cir. 2001).  In Oden, the Fifth Circuit held that a plaintiff cannot pursue a separate cause of action under Section 1981 against a state actor, but may assert his Section 1981 substantive rights through Section 1983.  Id. at 464.

Plaintiff's complaint alleges that Defendant is liable for violating his Section 1981 rights through its discriminatory employment practices via Section 1983.  In Plaintiff's response to Defendant's motion, he reiterates that the claims asserted under Section 1981 are not independent from the Section 1983 cause of action.  Pursuant to Oden, Plaintiff may not bring a separate claim under Section 1981.  Therefore, Plaintiff may enforce his Section 1981 substantive rights within the scope of his Section 1983 claim but may not maintain a separate cause of action under Section 1981.

**B.   <u>Section 1983</u>**

In order to prevail on a claim under Section 1983,[46] a plaintiff must establish that the defendant deprived the plaintiff of his constitutional rights while acting under the color of state law.  <u>Moody v. Farrell</u>, 868 F.3d 348, 351 (5th Cir. 2017).  The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law.  <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

**1.   Exclusive Remedy**

Defendant contends that Plaintiff cannot bring both a Title VII and Section 1983 claim because Plaintiff's remedy is limited to Title VII.  Courts have recognized that Title VII is the exclusive remedy for violations of its own terms and carries specific remedial provisions that cannot be circumvented.  <u>See, e.g.,</u> <u>Grady v. El Paso Cmty. Coll.</u>, 979 F.2d 1111, 1113 (5th Cir. 1992)("[A] violation of Title VII cannot support a 1983 suit."); <u>Irby v. Sullivan</u>, 737 F.2d 1418, 1428 (5th Cir. 1984) ("[T]he rights created by section 704(a) [of Title VII] may not be asserted within the remedial framework of Section 1983.").

---

[46]     The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

In support of its argument, Defendant relies on <u>Jackson v. City of Atlanta</u>, 73 F.3d 60, 61 (5th Cir. 1996), which held that a plaintiff cannot pursue a cause of action under both Section 1983 and Title VII from the same set of allegations without identifying an additional constitutional or statutory right.  However, the Fifth Circuit has held that the same facts can create claims under both remedies when a separate constitutional right is asserted. <u>See</u> <u>Southard v. Tex. Bd. of Crim. Just.</u>, 114 F.3d 539, 549 (5th Cir. 1997) ("Title VII is the exclusive remedy for a violation of its own terms.  But when a public employer's conduct violates Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII.") (quoting <u>Johnston v. Harris Cty. Flood Control Dist.</u>, 869 F.2d 1565, 1573 (5th Cir. 1989)).

In this case, Plaintiff is claiming an equal protection violation as a predicate to liability under Section 1983. Plaintiff pleads that Defendant's "historical discrimination" towards African-American employees is the underlying constitutional violation.[47] In response to Defendant's motion, Plaintiff cites to the following facts in his complaint to support an equal protection violation: the disparate impact lawsuit, preferential treatment toward white firefighters, racial animosity exhibited by Executive Chief Mann, the job advertisement for the desk position after

---

[47]     Doc. 8, Pl.'s Resp. to Def. City of Houston's Mot. to Dismiss p. 5.

Plaintiff's termination, and the insulting nicknames such as "paper captain" and "one of the seven."[48]  The court therefore finds that Plaintiff has alleged enough to maintain a separate cause of action under Section 1983.[49]

## 2.  Municipal Liability

Defendant also challenges Plaintiff's Section 1983 claim on the basis that Plaintiff has failed to allege a city policy or custom.

A city may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011).  To succeed on a claim under Section 1983, the plaintiff must demonstrate that the city "had some inadequate custom or policy that acted as the moving force behind a constitutional violation." Forgan v. Howard Cty., Tex., 494 F.3d 518, 522 (5th Cir. 2007)(citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978)); see also Connick, 131 S. Ct. at 1359. Official municipal policy "includes the decisions of a government's lawmakers, the acts of its

---

[48]    Id. pp. 5-6.

[49]    Additionally, in Defendant's motion to dismiss, Defendant asserts that Plaintiff cannot maintain a "Section 1983 . . . disability discrimination claim" because his only remedy exists under Title VII.  The ADA is Plaintiff's remedy for disability discrimination, not Title VII; and, the court finds that Plaintiff may maintain both a Section 1983 claim and a disability discrimination claim under the ADA in the same action.  See, e.g., Sullivan v. City of Round Rock, No. A-14-CV-349-AWA, 2017 WL 4001572, at **2-3 (W.D. Tex. Sept. 11, 2017)(slip op.)("an ADA claim may not be brought pursuant to § 1983"); Rideau v. Keller Indep. Sch. Dist., 978 F. Supp.2d 678, 682-684 (N.D. Tex. 2013)(asserting both an ADA and Section 1983 claim).

policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Peña v. City of Rio Grande</u>, 879 F.3d 613, 621-22 (5th Cir. 2018)(quoting <u>Connick</u>, 563 U.S. at 61).

However, this court has found that at the motion to dismiss stage, a plaintiff "need not specifically state what the policy is . . . but may be more general." <u>Thomas v. City of Galveston</u>, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011).  A plaintiff must still "provide fair notice to the defendant, and this requires more than generically restating the elements of municipal liability." <u>Id.</u> Such allegations could include "past incidents of misconduct to others, multiple harms that occurred to the plaintiff, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy." <u>Id.</u>; <u>see also</u> <u>Hicks-Fields v. Harris Cty.</u>, 860 F.3d 803, 808 (5th Cir. 2017)(holding that a city can only be liable for a discriminatory custom if the policymaker was actually or constructively aware of the practice).

Plaintiff alleges that there was a custom or policy of racial discrimination in promotions and job accommodations towards black firefighters; Plaintiff also alleges a custom of disability discrimination.[50]  Plaintiff states in his complaint:

Chief Richard Mann and Fire Chief Terry Garrison were

---

[50]     <u>See</u> Doc. 2, Pl.'s Am. Compl. p. 16.

> official policy makers for the Houston Fire Department.
> Moreover, Mann and Garrison were the top two employees in
> terms of rank in the HFD at all relevant times . . .
> Here, Garrison and Mann actually knew of the retaliatory
> and discriminatory behavior towards [Plaintiff], they
> knew he was excellent at his job, Garrison knew
> [Plaintiff] was being denied light duty positions
> unreasonably, Mann was actually denying reasonable
> requests by [Plaintiff], and they knew Defendant was
> forcing medical separation onto [Plaintiff], yet they did
> nothing.[51]

Defendant contends that the complaints does not show that Executive
Chief Mann and Chief Garrison were responsible for final city
policy.   Additionally, Defendant asserts that Plaintiff's
allegations do not support a policy of discrimination, citing the
following facts: (1) Chief Garrison congratulated Plaintiff on the
promotion; (2) Plaintiff was given some job accommodations by HFD;
and (3) one of the comparators he identifies is also African-
American.

While Plaintiff does not allege that Chief Garrison and
Executive Chief Mann are final policymakers whose decisions are
"administratively unreviewable," he argues that final policymakers
were nevertheless bound by Chief Garrison and Executive Chief
Mann's custom of discrimination through knowledge of the
discriminatory practices at HFD.   See Gelin v. Hous. Auth. of New
Orleans, 456 F.3d 525, 528 (5th Cir. 2006); see also Brady v. Fort
Bend County, 145 F.3d 691, 700 (5th Cir. 1998)(holding that a final
policymaker's exercise of discretion was "unreviewable by any other

---

[51]    Id. p. 17.

14

official or governmental body in the county"). In support, Plaintiff points to the city council's constructive knowledge of the custom of racial discrimination practices in HFD, through the earlier lawsuit settlement that alleged disparate impact to African-Americans. Also, Plaintiff has identified five white comparators in his complaint who received more favorable treatment and job accommodations he did not receive. Looking to Plaintiff's complaint, the court finds that he alleges enough to survive at the motion to dismiss stage.

**D.   Title VII and TCHRA**

Plaintiff alleges claims for racial discrimination under Title VII and the TCHRA. In interpreting the TCHRA, Texas courts "look to analogous federal precedent for guidance." Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 473-74 (5th Cir. 2006)(quoting NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999)). Therefore, the court will analyze Plaintiffs' TCHRA and Title VII claims together.

**1.   Discrimination**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In the absence of direct evidence, as is the case here, courts analyze discrimination and retaliation claims under the burden-

shifting approach first articulated in <u>McDonnell Douglas Corp. v.</u>
<u>Green</u>, 411 U.S. 792 (1973) [hereinafter <u>McDonnell Douglas</u>], and
modified in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), and
<u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004).
Under this "modified <u>McDonnell Douglas</u> approach," a plaintiff may
trigger a presumption of discrimination by establishing a prima
facie case.  <u>Rachid</u>, 376 F.3d at 312.

A prima facie case of race discrimination requires the
plaintiff to show that he: (1) is a member of a protected class;
(2) was qualified for his position; (3) suffered an adverse
employment action; and (4) was replaced by someone who is not a
member of the protected classes to which the plaintiff belongs or
was treated less favorably than similarly situated employees of a
different race or religion.  <u>See</u> <u>Okoye v. Univ. of Tex. Houston</u>
<u>Health Sci. Ctr.</u>, 245 F.3d 507, 512-13 (5th Cir. 2001).  In the
Fifth Circuit, "[a]dverse employment actions include only ultimate
employment decisions such as hiring, granting leave, discharging,
promoting, or compensating." <u>McCoy v. City of Shreveport</u>, 492 F.3d
551, 559 (5th Cir. 2007).  The court also notes that proof of
disparate treatment can establish the fourth element of the
plaintiff's prima facie case.  <u>See</u> <u>Bryant v. Compass Group USA</u>
<u>Inc.</u>, 413 F.3d 471, 478 (5th Cir. 2005), <u>cert. denied</u>, 413 U.S. 471
(2006); <u>Okoye</u>, 245 F.3d at 513.  "To raise an inference of
discrimination, the plaintiff may compare his treatment to that of

nearly identical, similarly situated individuals." Bryant, 413
F.3d at 478.

Plaintiff has sufficiently pled the first three elements: (1)
he is an African American; (2) he is qualified for the position as
demonstrated by his extensive experience and accolades; and (3) he
was rejected for the desk position despite his qualifications.
Defendant challenges the fourth element by pointing to a similarly
situated African-American woman in Plaintiff's complaint, Roberts,
who was treated more favorably by being granted reasonable
accommodations.

In an effort to satisfy the fourth element, Plaintiff cites
the following facts to support his discrimination claim: (1) the
disparate impact lawsuit; (2) treatment and accommodation of
firefighters who were not African-American; (3) Executive Chief
Richard Mann's treatment towards him; (4) City of Houston's
advertisements for "light-duty" jobs after denying Plaintiff the
same employment; (5) HFD employees referring to him as "paper
captain" and "one of the seven;" and (6) Chief Garrison's denial of
Plaintiff's requests.[52] Moreover, Plaintiff alleges that Roberts
was given preferential treatment as her reward for not pursuing
legal action against Defendant and her friendship with Assistant
Chief Campbell.  With respect to the fourth element, the court
notes that Plaintiff has pled sufficient facts to survive a motion

---

[52]     Doc. 8, Pl.'s Resp. to Def. City of Houston's Mot. to Dismiss p. 7-8.

to dismiss.

**2.  Retaliation Claim**

Defendant contends that Plaintiff has not pled the causation element of a prima facie case of retaliation.

When reviewing Title VII retaliation claims, a similar McDonnell Douglas framework used for discrimination claims is also applied.  The prima facie elements of a retaliation claim are: "(1) the employee engaged in an activity protected under Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action." Fisher v. Lufkin Indus. Inc., 847 F.3d 752, 757 (5th Cir. 2017).  The protected activity must be a "but-for" cause of the alleged adverse action to establish a retaliation claim. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

While courts have allowed plaintiffs to rely on close timing to provide a causal connection, it is not necessarily determinative of retaliation. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995).  Plaintiffs may also introduce additional evidence to satisfy the causation element. See Zamora v. City Of Houston, 798 F.3d 326, 335 (5th Cir. 2015) ("Our inquiry here, however, is not whether temporal proximity alone shows causation—Zamora has produced other evidence of causation...").

Defendant moves for dismissal on the grounds that Plaintiff

18

fails to plead but-for causation between his protected activity, the settlement, and the alleged adverse employment actions. Specifically, Defendant asserts that the timing between the settlement and the adverse employment action is too remote to prove but-for causation.[53]

In support of a causal connection, Plaintiff links the name-calling ("one of the seven") and disparaging remarks ("paper captain") to the protected activity. Plaintiff contends that these remarks by HFD employees are causally related to the settlement which sufficiently motivated Plaintiff's supervisors to forcefully terminate his employment. Additionally, Plaintiff asserts that other employees were given accommodations that Plaintiff was denied.

The court acknowledges that the timing between Plaintiff's protected activities and the alleged adverse employment actions is not enough on its own to establish a causal link for purposes of a retaliation claim. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (citing cases holding that three- and four-month periods between protected activity and an adverse employment action were insufficient to establish a causal connection). However, Plaintiff does not rely exclusively on close timing. The contributing factors discussed above are sufficiently pled to show a causal connection between his protected activity and the adverse

---

[53]    Doc. 7, Def.'s Mot. to Dismiss p. 9.

employment action to survive a motion to dismiss.

## F.  **Breach of Contract**

Defendant asserts that, as a governmental entity, it is immune from a breach of contract claim.  Governmental immunity protects public entities from suit and liability.[54]  See Smith v. Houston Indep. Sch. Dist., 229 F. Supp. 3d 571, 576 (S.D. Tex. 2017)(slip op.)(citing Tooke v. City of Mexia, 197 S.W.3d 325, 331 n.11 (Tex. 2006)).  Texas Local Government Code § 271.152 waives this immunity for breach of contract claims.  However, "[Texas Local Government Code] § 271.156 explicitly exempts suits in federal court from that waiver."  Id.; see also Tex. Local Gov't Code § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court.").

The Texas Local Government Code makes it clear that immunity is not waived for breach of contract claims in federal court. Additionally, there is no allegation in Plaintiff's complaint that Defendant has consented to waiving its immunity in this case.

---

[54]      In his motion, Plaintiff cites Wasson Interests, Ltd. v. City of Jacksonville, 489 S.W.3d 427 (Tex. 2016) and contends that the settlement contract in this case falls under a proprietary function of the municipality, not a governmental function.  Per the Texas Civil Practice and Remedies Code § 101.0215(b), a proprietary function is defined as:
    (1) the operation and maintenance of a public utility;
    (2) amusements owned and operated by the municipality; and
    (3) any activity that is abnormally dangerous or ultrahazardous.

The settlement agreement in this case clearly does not fall under one of those categories.  Plaintiff does not explain how it is a proprietary function, instead merely makes conclusory statements that it involves a proprietary function and that Defendant executed the settlement agreement in the interests of the taxpayers.  The court finds that the settlement agreement was related to governmental function (a)(1) as it involves the fire department.  See Tex. Local Gov't Code 271.152(a)(1).

Plaintiff's breach of contract claim should be dismissed.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.  Plaintiff's claims under Section 1983, Title VII, the TCHRA, and the ADA survive.

**SIGNED** in Houston, Texas, this 29th day of June, 2018.

_____
U.S. MAGISTRATE JUDGE

21